# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RIVKA LIVNAT, *et al.*, <br>      Plaintiffs <br><br>      v. <br><br> THE PALESTINIAN AUTHORITY, <br>      Defendant | Civil Action No. 14-668 (CKK) |

## MEMORANDUM OPINION
(February 11, 2015)

This action arises from a machine-gun attack on a group of worshippers at a Jewish holy site known as Joseph's Tomb, near the West Bank city of Nablus. One of those worshippers, Ben-Yosef ("Benyo") Livnat, was killed and several others were injured in the shooting, which was carried out allegedly by Palestinian Authority ("PA") security personnel. Yehuda Livnat, Benyo's brother, was also present at the scene of the attack. Plaintiffs are members of Ben-Yosef Livnat's family, including his parents, his siblings, his wife, and his several minor children.[1] Compl. ¶¶ 2-6. The defendant, the Palestinian Authority, is a non-sovereign government providing certain government services in the West Bank. *Id.* ¶ 7. Members of the Livnat family who are U.S. citizens and residents of Israel[2] bring two claims against the Palestinian Authority under the civil liability provision of the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(a).[3] These family members bring a claim under section 2333(a) under a vicarious liability theory and

---

[1] Ben-Yosef Livnat's mother, Rivka Livnat, brings this action individually and as personal representative of the estate of Ben-Yosef Livnat.

[2] The allegations in the Complaint do not state the residency of Plaintiffs, but the Complaint lists each individual plaintiff as residing in Israel. In addition, in their Opposition to the Motion to Dismiss, Plaintiffs state that the victims of the attack are all residents of Israel. *See* Pls.' Mem. of Law in Opp'n to Def. PA's Mot. to Dismiss, ECF No. 16, at 44.

[3] "Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees." 18 U.S.C. 2333(a).

a claim for aiding and abetting international terrorism. In addition, certain plaintiffs bring several

nonfederal claims pursuant to the law of the State of Israel. Rivka Livnat, on behalf of the estate

of Ben-Yosef Livnat, brings a claim for battery against the Palestinian Authority. Yehuda Livnat

brings a claim for assault against the Palestinian Authority. Finally, all plaintiffs bring a claim for

negligence against the Palestinian Authority.

Before the Court is Defendant Palestinian Authority's [13] Motion to Dismiss, pursuant

to Rules 12(b)(2) (lack of personal jurisdiction), 12(b)(3) (improper venue), 12(b)(5) (insufficient

service of process), and 12(b)(6) (failure to state a claim upon which relief can be granted).[4] Also

before the Court is Plaintiffs' [17] Cross-Motion, in the Alternative, for Leave to Take

Jurisdictional Discovery. Upon consideration of the pleadings,[5] the relevant legal authorities, and

the record as a whole, the Court GRANTS the Palestinian Authority's [13] Motion to Dismiss

---

[4] Defendant argues that the Complaint fails to state a claim with respect to the ATA claims because Plaintiffs have not pled an act of international terrorism, because there is no vicarious liability under the ATA, because there is no aiding and abetting liability under the ATA, and because the ATA does not create liability for emotional injuries to family members who were not present at a scene of international terrorism. Defendant argues that the assault and battery claims are barred by the statute of limitations and that the Complaint does not allege a negligence claim under what it claims is the governing law, the law of the West Bank.

[5] The Court's consideration has focused on the following documents:

- Complaint, ECF No. 1 ("Compl.");
- Def. PA's Mot. to Dismiss ("Mot. to Dismiss"), ECF No. 13, including Decl. of Arieh Dan Spitzen ("Spitzen Decl.") and Decl. of Jeffrey Addicott ("Addicott Decl.");
- Pls.' Mem. of Law in Opp'n to Def. PA's Mot. to Dismiss, ECF No. 16;
- Def. PA's Reply to Pls.' Opp'n to the PA's Mot. to Dismiss ("Def.'s Reply"), ECF No. 19;
- Pls.' Cross-Motion, in the Alternative, for Leave to Take Jurisdictional Discovery ("Pls.' Jur. Disc. Mot."), ECF No. 17;
- Def. PA's Opp'n to Pls.' Cross-Mot., in the Alt., for Leave to Take Jur. Disc. ("Def.'s Jur. Disc. Opp'n"), ECF No. 22; and
- Pls.' Reply in Supp. of Cross-Mot., in the Alt., for Leave to Take Jur. Disc. ("Pls.' Jur. Disc. Reply"), ECF No. 23.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

and DENIES Plaintiffs' [17] Cross-Motion. The Court concludes that it has no personal

jurisdiction over the Palestinian Authority with respect to the claims at issue in this action. The

Court also concludes that jurisdictional discovery is not warranted. Therefore, the Court does not

consider Defendant's other arguments in favor of dismissal. Accordingly, the Court DISMISSES

all claims against Defendant Palestinian Authority and dismisses this action in its entirety.

## I. BACKGROUND

For the purposes of this motion, the Court accepts as true the factual allegations in

Plaintiffs' Complaint. The Court does "not accept as true, however, the plaintiff's legal

conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on*

*Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). The Court recites the facts pertaining to

the issues that the Court addresses with respect to the pending motion, focusing on those facts

relevant to the jurisdictional inquiry in which the Court engages.

On April 24, 2011, Ben-Yosef Livnat (also known as "Benyo") and Yehuda Livnat,[6]

together with 15 others, visited Joseph's Tomb, a Jewish holy site, near the West Bank city of

Nablus. Compl. ¶ 15. Benyo and other Jewish worshippers entered the building housing Joseph's

Tomb to pray while Yehuda and another person remained in the vehicles. *Id.* ¶ 16. After Benyo

and others entered the building, Palestinian Authority security forces led by Mohammed Saabneh

allegedly began firing their automatic weapons. *Id.* ¶ 17. Benyo and the other visitors

immediately exited the building, running to their vehicles and attempting to drive off. *Id.* ¶ 18.

As the visitors were attempting to leave, Saabneh allegedly announced to the other security

personnel that he intended to fire at the vehicles and that he intended to cause death. *Id.* ¶ 19.

---

[6] Because they share a last name, the Court refers to Benyo and Yehuda Livnat by their first
names.

Saabneh and Salah Hamed, another member of the Palestinian Authority security forces, allegedly fired their weapons at the vehicles at close range. *Id.* Three of the people in one of the vehicles were wounded. *Id.* Noaf Wael, one of Saabneh's subordinates, allegedly opened fire at close range at another vehicle, in which Benyo and Yehuda were seated. *Id.* ¶¶ 20-21. Benyo was shot in the neck while Yehuda was sitting next to him, and then they rushed to an infirmary by car. *Id.* ¶ 21. Benyo later died from his wounds. *Id.* ¶ 22. As a result of the loss, Benyo's immediate family members claim they have suffered emotionally and struggle with their grief and loss. *Id.* ¶ 23. After the group of worshippers left, the Palestinian Authority security forces, under orders from Saabneh, allegedly attempted to remove evidence of the shooting from the scene of the attack by replacing the spent shell casings with rocks, in order to give the appearance that the security forces had been attacked by people throwing rocks at them. *Id.* ¶ 24. After the attack, a Palestinian Authority spokesperson justified the attack in an interview on Israeli radio. *Id.* ¶ 47.

Plaintiffs further allege that the attack described above is part of the Palestinian Authority's policy and practice of encouraging acts of terror and using terrorism to influence U.S. public opinion and policy.[7] Compl. ¶ 14; *see id.* ¶¶ 40-44; Addicott Decl. ¶¶ 3-4.

---

[7] In Plaintiffs' Opposition, relying on a declaration by Professor Jeffrey F. Addicott, Director of the Center for Terrorism Law at St. Mary's University School of Law, Plaintiffs more fully explain their theory of how the alleged support for terrorist activity by the Palestinian Authority is intended to influence United States policy:

> [T]he PA, recognizing that the United States "places as a top priority a peaceful resolution of the Israeli-Palestinian conflict," employs terrorism "to influence the United States to pressure Israel for greater concessions" in peace negotiations with the PA. … "[B]y keeping terrorism on the plate, the PA view is that the United States will continue to exert greater pressure on Israel with little cost to the PA" and that without the use of terrorism, "the emphasis forcing Israeli compromises would quickly fade."

Pls.' Opp'n at 36-37 (quoting Addicott Decl. ¶¶ 3, 4, 10) (citations omitted). Defendant characterizes the relationship between the United States government and the Palestinian

Specifically, Plaintiffs allege that the attack underlying this action was intended to influence the policies of the Israeli government and of the United States government regarding the right of Israelis to visit Jewish religious sites in the West Bank or to visit or live in the West Bank, as well as the policies of both governments regarding peace negotiations with the Palestinian Authority and Israel's presence in the West Bank.[8] Compl. ¶ 51.c. In support of that claim and in support of jurisdiction, Plaintiffs allege that the Palestinian Authority operates an office in the United States, conducts public relations and other activities, and receives hundreds of millions of dollars in aid from the United States each year. Compl. ¶ 10. In response, Defendant argues that the office in question is the office of the General Delegation of the PLO to the U.S. *See* Def.'s Mot. to Dismiss at 12; Declaration of Ambassador Maen Areikat ("Areikat Decl."), ECF No. 13-2, ¶ 15. Defendant describes the Palestine Liberation Organization, or PLO, as "an umbrella organization

---

Authority differently, quoting from a government brief in another case, *Bernstein v. Kerry*, No. 13-5312 (D.C. Cir. May 19, 2014), as to that relationship:

> The State Department's considered judgment is that provision of financial assistance to the Palestinian Authority and to other organizations in the region "creates an atmosphere that supports negotiations, encourages broad-based economic growth, promotes democratic governance, and improves the everyday lives of Palestinians, thereby creating an environment supportive of a peace agreement and contributing to the overall stability and security of the region."

Def.'s Mot. to Dismiss, Ex. 5 (quoting Brief for Appellees at 18, *Bernstein v. Kerry*, No. 13-5312 (D.C. Cir. May 19, 2014). Ultimately, the Court does not have to accept either view to resolve this motion.

[8] Plaintiffs also allege the following background facts pertaining to the attack. The Palestinian Authority selected and employed the security forces posted at Joseph's Tomb. *Id.* ¶ 25. In 2004, the Palestinian Authority hired Saabneh as a security officer in its security forces. *Id.* ¶ 26. In June 2005, Saabneh pled guilty to supplying bomb-making components to operatives of two terrorist organizations. *Id.* ¶ 27. After serving a prison sentence, Saabneh returned to work with the Palestinian Authority security forces in December 2006. *Id.* ¶ 29. In 2007, Saabneh was detained by Israeli authorities for involvement with terrorist organizations and was ultimately released in July 2008. *Id.* ¶¶ 30-31. Saabneh then returned to active duty with the Palestinian Authority security services, and the Palestinian Authority subsequently promoted him to the rank of sergeant. *Id.* ¶¶ 33-34. He was then posted at Joseph's Tomb, *id.* ¶ 35, which is a religious site in the West Bank that is visited by a significant number of Jewish people, *Id.* ¶ 37.

of various political parties and represents the nationalist aspirations of Palestinians, including those in the diaspora." Areikat Decl. ¶ 14.  Defendant argues that the office is not an office of the Palestinian Authority, and that, in fact, the Palestinian Authority, a non-sovereign government, is prohibited from having embassies, missions, or consulates abroad. *See* Def.'s Mot. to Dismiss at 12; Areikat Decl., ¶ 15.

## II. LEGAL STANDARD

When personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff bears the burden of establishing a factual basis for asserting personal jurisdiction over a defendant. *See Crane v. N.Y. Zoological Soc'y,* 894 F.2d 454, 456 (D.C. Cir. 1990). At this stage, Plaintiffs "can satisfy that burden with a *prima facie* showing.'" *Mwani v. bin Laden,* 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 424 (D.C. Cir. 1991)). To do so, the plaintiff cannot rest on bare allegations or conclusory statements but "must allege specific acts connecting [the] defendant with the forum." *Second Amendment Found. v. U.S. Conference of Mayors,* 274 F.3d 521, 524 (D.C. Cir. 2001) (internal quotation marks omitted). "To make such a showing, the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial[;]" but rather, the plaintiffs may "rest [their] arguments on the pleadings, 'bolstered by such affidavits and other written materials as [they] can otherwise obtain.'" *Urban Inst. v. FINCON Servs.,* 681 F. Supp. 2d 41, 44 (D.D.C. 2010) (quoting *Mwani,* 417 F.3d at 7).

In order to obtain jurisdictional discovery a "plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC,* 148 F.3d 1080, 1090 (D.C. Cir. 1998); *see also Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.,* 638 F. Supp. 2d 1, 11

(D.D.C. 2009) (holding that [j]urisdictional discovery … is justified only if the plaintiff reasonably 'demonstrates that it can supplement its jurisdictional allegations through discovery.'") (quoting *Kopff v. Battaglia,* 425 F. Supp. 2d 76, 89 (D.D.C. 2006)). "Mere conjecture or speculation" is not enough to justify jurisdictional discovery. *FC Investment Group LC v. IFX Markets Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008).

### III. DISCUSSION

The Palestinian Authority moves to dismiss this action under Rule 12(b)(2) for lack of personal jurisdiction, arguing that it has insufficient contacts with the United States to support jurisdiction. Because the Court agrees that there is neither general jurisdiction over the Palestinian Authority because of its contacts with the United States nor specific jurisdiction over the Palestinian Authority with respect to the specific claims in this action, the Court does not reach the Palestinian Authority's other arguments for dismissal.

### A. Framework and Roadmap

Plaintiffs only claim that this Court has jurisdiction over the Palestinian Authority pursuant to Rule 4(k)(2),[9] which states that service establishes jurisdiction if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). To use this provision, Plaintiffs are not required to show that there is no jurisdiction in any state court over the Palestinian Authority. *Mwani*, 417 F.3d at 11. Because the Palestinian Authority "does not concede to jurisdiction in another state, [this C]ourt may use 4(k)(2) to confer

---

[9] Plaintiffs have forfeited the use of Rule 4(k)(1)(C) to establish jurisdiction pursuant to a nationwide service of process provision. In their Opposition, Plaintiffs did not respond to Defendant's argument that this provision is inapplicable. Regardless, the Due Process inquiry under 4(k)(1)(C) is the same as under 4(k)(2): both focus on a defendant's contacts with the United States rather than with an individual state.

jurisdiction.'" *Id*. "Whether the exercise of jurisdiction is 'consistent with the Constitution' for purposes of Rule 4(k)(2) depends on whether a defendant has sufficient contacts with the United States as a whole to justify the exercise of personal jurisdiction under the Due Process Clause of the Fifth Amendment." *Id*. Accordingly, the inquiry in this case is whether the Palestinian Authority has sufficient contacts with the United States as a whole.

There are two types of personal jurisdiction that a court can exercise, general jurisdiction and specific jurisdiction. Both are at issue in this action.

Regarding general or all-purpose jurisdiction, a court may assert jurisdiction over a foreign defendant "'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum state.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (quoting *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)); *see also Goodyear*, 131 S. Ct. at 2853 (quoting *International Shoe v. Washington*, 326 U.S. 310, 318 (1945) (General jurisdiction consists of "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.").[10]

"Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 131 S. Ct. at 2851 (citation omitted). Specific jurisdiction exists "where the corporation's in-state activity is 'continuous and systematic' and *that activity gave rise to the episode-in-suit*." *Id.* at 2853

---

[10] The Court notes, at this juncture, that Plaintiffs argue that the *Daimler/Goodyear* formulation of the test for general jurisdiction does not apply in these circumstances. The Court analyzes that question further below. Because the Court concludes that the framework applies, it presents the general framework here in the interest of clarity.

(quoting *International Shoe*, 326 U.S. at 317) (emphasis in original). In addition, in certain circumstances, the "commission of certain 'single or occasional acts' in a State may be sufficient to render a corporation answerable in that State with respect to those acts, though not with respect to matters unrelated to the forum connections." *Id*. at 2853.

Given this framework, *first*, the Court determines whether Due Process applies to the Palestinian Authority as an entity, concluding that it does. *Second*, the Court analyzes whether there is general jurisdiction over the Palestinian Authority. The Court concludes that the *Daimler/Goodyear* framework is applicable in these circumstances and that pursuant to that framework there is no general jurisdiction over the Palestinian Authority. The Court also concludes that jurisdictional discovery is not warranted with respect to general jurisdiction. *Third*, the Court analyzes whether there is specific jurisdiction over the Palestinian Authority with respect to the particular claims in this action, concluding that there is none and that jurisdictional discovery is not warranted. Because the Court concludes that Defendant does not have sufficient contacts with the United States for the Court to exercise jurisdiction under a theory of general jurisdiction or of specific jurisdiction, the Court does not address Defendant's argument that there was no effective service of process.

## B. Due Process is Applicable to the Palestinian Authority

The D.C. Circuit has not addressed whether the Palestinian Authority or other non-sovereign governments have due process rights. But district court judges, in this district and elsewhere, have applied the Due Process clause to the Palestinian Authority. *See Estate of Klieman v. Palestinian Auth.*, 467 F. Supp. 2d 107, 113 (D.D.C. 2006); *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 180 (D.D.C. 2004); *Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 153 F. Supp. 2d 76, 88-89 (D.R.I. 2001); *Sokolow v. Palestine*

*Liberation Org.*, No. 04 CV 00397 GBD, 2011 WL 1345086, at *2 (S.D.N.Y. Mar. 30, 2011);

*Sokolow v. Palestine Liberation Org.*, No. 04 CIV. 397 GBD, 2014 WL 6811395, at *2 (S.D.N.Y.

Dec. 1, 2014). Analyzing the relevant precedents, this Court agrees that the Palestinian Authority

has Due Process rights.

The D.C. Circuit Court of Appeals addressed a related question in *GSS Group Ltd. v.

National Port Authority*, 680 F.3d 805 (D.C. Cir. 2012), concluding that foreign state-owned

corporations, such as the National Port Authority of Liberia, have Due Process rights. *Id.* at 817.

Importantly, the Court of Appeals distinguished *Price v. Socialist People's Libyan Arab

Jamahiriya,* 294 F.3d 82 (D.C. Cir. 2002), in which the Court of Appeals had previously held that

*foreign states* do not have Due Process rights because they are juridical equals with the United

States. *Id.* at 96-97. Given this conclusion, Plaintiffs cannot rely on *Price*—as they seek to—to

argue that the Palestinian Authority has no Due Process rights. Like foreign state-owned

corporations, but unlike sovereign nations, the Palestinian Authority, a non-sovereign

government, is not a juridical equal of the United States. Similarly, Plaintiffs cannot rely on those

cases that suggest that foreign defendants do not have Due Process rights if they do not have

property or presence in the U.S. Just as the Court of Appeals concluded in *GSS Group*, "[i]n

opposing personal jurisdiction on due process grounds the [defendant], through its attorney,

makes itself present." *Id.* Therefore, *GSS Group* all but requires the conclusion that the

Palestinian Authority, like the National Port Authority of Liberia, has Due Process rights.

Plaintiffs' attempt to liken the Defendant to a municipality, arguing that municipalities

and other local government entities have no Due Process rights, is similarly unsuccessful.

Contrary to Plaintiffs' suggestion that municipalities do not have Due Process rights, in fact,

"[t]he circuits are split as to whether a state's political subdivisions are afforded due process

under the Fifth Amendment," and the D.C. Circuit has not yet spoken on the issue. *South Dakota v. U.S. Dep't of Interior*, 665 F.3d 986, 991 (8th Cir. 2012). *Compare In Re Real Est. Title & Settlement Servs. Antitrust Litig.,* 869 F.2d 760, 765 n.3 (3d Cir. 1989) (holding "school boards are persons within the meaning of the Fifth Amendment due process clause"), *with City of E. St. Louis v. Cir. Ct. for the Twentieth Jud. Cir., St. Clair Cnty., Ill.,* 986 F.2d 1142, 1144 (7th Cir. 1993) (holding "[m]unicipalities ... are not 'persons' within the meaning of the Due Process Clause" of the Fifth or Fourteenth Amendments). Moreover, even if it were clear that U.S. municipalities have no Due Process rights, there are numerous differences between local governments in the United States and foreign non-sovereign governments. Whether municipalities have Due Process rights does not determine whether organizations like the Palestinian Authority have those rights.

Lastly, Plaintiffs' reliance on decades-old cases reasoning that the Palestine Liberation Organization has no rights because it is outside of the constitutional structure of the United States is similarly unavailing. Cases such as *Palestine Information Office v. Shultz*, 674 F. Supp. 910 (D.D.C. 1987), *aff'd* 853 F.2d 932 (D.C. Cir. 1988), and *Mendelsohn v. Meese*, 695 F. Supp. 1474, 1480-81 (S.D.N.Y. 1988), have been abrogated by subsequent case law, specifically the conclusion in *GSS Group* that foreign state-owned corporations have Due Process rights even though they are outside of the constitutional structure of the U.S. The Court notes as well that the Palestinian Authority had not yet been created when these cases were decided, more than a quarter of a century ago. It is far from obvious that factors applicable to the Palestine Liberation Organization a quarter of a century ago are applicable to the Palestinian Authority today.

Accordingly, the Court concludes that the Palestinian Authority has Due Process rights. This Court can only assert jurisdiction over the Palestinian Authority in accordance with those rights.

## C.  No General Jurisdiction over the Palestinian Authority[11]

In two recent cases, *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), and *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011), the Supreme Court clarified the scope of general jurisdiction. Specifically, the Supreme Court made it clear that a court may assert general jurisdiction "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum state.'" *Daimler*, 134 S. Ct. at 751. Defendant argues that the *Daimler*/*Goodyear* framework requires the conclusion that there is no general jurisdiction over the Palestinian Authority. Plaintiffs respond that the *Daimler*/*Goodyear* framework is inapplicable in these circumstances because, first, it is applicable only to corporations and not to entities like the Palestinian Authority and, second, that inquiry is limited to circumstances where a court evaluates contacts with an individual State under the Fourteenth Amendment Due Process Clause, rather than with the United States under the Fifth Amendment. (The parties agree that, insofar as the Palestinian Authority has Due Process rights in the first place, the relevant inquiry here is under the Fifth Amendment, requiring the Court to assess the sufficiency of the Palestinian Authority's contacts with the United States as whole.) Plaintiffs also respond that, even if the *Daimler*/*Goodyear* framework is

---

[11] The Court assumes that the United States may, in some circumstances, exert general jurisdiction over foreign entities on the basis of contacts with the United States. However, the Court notes that, even if an entity's "affiliations" with the United States were "so constant and pervasive 'as to render [it] essentially at home'" in the United States, the federal courts could not hear "any and all claims against" the defendant. At most, they could hear any and all claims in an action that includes federal claims over which jurisdiction could be established through a statutory nationwide service of process provision or over which no state court has jurisdiction. *See* Fed. R. Civ. P. 4(k).

applicable, the Palestinian Authority has sufficient contacts with the United States to establish

jurisdiction. In the alternative, they argue that, if the Court does not find sufficient contacts based

on the record before it, the Court should order jurisdictional discovery rather than dismissing for

lack of jurisdiction. The Court addresses these arguments in turn.

### a.   The *Daimler*/*Goodyear* Framework is Applicable in these Circumstances

First, while, Plaintiffs argue that the *Daimler*/*Goodyear* framework only applies to

corporations, there is no indication that the Supreme Court intended this framework to be so

limited in its application. *Daimler* framed the relevant inquiry in general terms: "*Goodyear* made

clear that only a limited set of affiliations with a forum will render a defendant amenable to all-

purpose jurisdiction there." 134 S. Ct. at 761. The Supreme Court enumerated several paradigm

all-purpose forums for certain types of defendants. "'For an individual, the paradigm forum for

the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an

equivalent place, one in which the corporation is fairly regarded as at home.' With respect to a

corporation, the place of incorporation and principal place of business are 'paradig[m] ... bases

for general jurisdiction.'" *Id.* (citations omitted). While the Supreme Court did not enumerate

paradigm all-purpose forums for other types of organizations, the Supreme Court never

suggested that this particular inquiry would be any different for a defendant that was neither an

individual nor a corporation. The only question is how to properly apply this standard to an

organization like the Palestinian Authority, not whether the "essentially at home" standard is the

correct standard.

Furthermore, while the Supreme Court in *Daimler* discussed the question of jurisdiction

in the context of international corporations, *see, e.g.*, *Daimler*, 134 S. Ct. at 763, it does not

follow that there are greater protections for such organizations than for non-sovereign

governments, such as the Palestinian Authority, that are protected by the Due Process clause. Plaintiffs also argue that *Daimler* and *Goodyear* relate to international commerce while this case pertains to international terrorism. *See* Pls.' Opp'n at 27. However, *Daimler* was not an international commercial dispute; it involved an action under the Alien Tort Statute and the Torture Victim Protection Act, as well as claims under nonfederal law, relating to activities during Argentina's "Dirty War." *See Daimler*, 134 S. Ct. at 751-52. None of facts particular to *Daimler* or to *Goodyear* suggest that the inquiry set out in those cases is inapplicable here.

Second, notwithstanding Plaintiffs' argument to the contrary, there is no indication that a more flexible jurisdictional inquiry is required in a case governed by the Due Process clause of the Fifth Amendment, such as this one, rather than under the Due Process clause of the Fourteenth Amendment. It is undisputed that, because the inquiry here is pursuant to the Fifth Amendment, the relevant contacts are Defendant's contacts with the United States rather than with an individual state. *See Mwani*, 417 F.3d at 11. But the inquiries are otherwise the same. *See Abelesz v. OTP Bank*, 692 F.3d 638, 656 (7th Cir. 2012) ("The issue under the Due Process Clauses of the Fifth and Fourteenth Amendments is whether the contacts "are so 'continuous and systematic' as to render [defendants] essentially at home in the forum.") (quoting *Goodyear,* 131 S. Ct. at 2851); *S.E.C. v. Straub*, 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013) ("Even though a defendant's contacts with the entire United States in such cases are determinative of the "minimum contacts" inquiry, because the language of the Fifth Amendment's due process clause is identical to that of the Fourteenth Amendment's due process clause, the same general principles guide the minimum contacts analysis.") (applying cases delineating the jurisdictional inquiry pursuant to the Fourteenth Amendment to the Fifth Amendment context).

The cases on which Plaintiffs rely to suggest a more flexible standard are all more than a quarter-century old and have been eclipsed by changes to the Federal Rules of Civil Procedure and subsequent precedent. *See Goss Graphic Sys. v. Man Roland Druckmaschinen Aktiengesellschaft*, 139 F. Supp. 2d 1040, 1065 (N.D. Iowa 2001) ("Because those cases precede the revisions to Rule 4(k) they do not take into account the explicit language of section (1)(D) which clearly requires that service of process be mandated by federal statute in order for the national contacts test to suffice for purposes of due process.") (discussing cases to which Plaintiffs cite). While Plaintiffs suggest that federalism concerns require greater limitations on jurisdiction tied to state courts, there are equally significant considerations with respect to the international arena that apply to cases such as this. *Cf. Daimler*, 134 S. Ct. at 763 ("Considerations of international rapport thus reinforce our determination that subjecting Daimler to the general jurisdiction of courts in California would not accord with the 'fair play and substantial justice' due process demands."). Finally, Plaintiffs suggest that a more flexible inquiry is necessary because Congress has demonstrated clear intent for the Anti-Terrorism Act to apply extraterritorially. Even taken at face value, this argument would only suggest something about specific jurisdiction—jurisdiction connected to specific claims in an action. It would not suggest anything about general jurisdiction for *all* claims addressed at a particular defendant. In any event, while Congress can establish jurisdiction to the full extent allowed by the Due Process clause, it is beyond Congress's power to establish jurisdiction outside the constraints of that clause.

In sum, the inquiry set out in *Daimler* and *Goodyear* applies to the assertion of general jurisdiction over the Palestinian Authority in this case. The Court now proceeds to conduct that inquiry, analyzing the Palestinian Authority's contacts with the United States.

### b.   The Palestinian Authority Is Not "Essentially At Home" in the United States

As noted above, the Supreme Court has enumerated paradigm all-purpose forums for certain types of defendants. "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.' With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'" *Daimler*, 134 S. Ct. at 761 (citations omitted). The Supreme Court also noted that "in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19 (citation omitted). The Palestinian Authority is not a corporation; rather, it is a non-sovereign government. Compl. ¶ 7. With respect to service of process and to amenability to suit, other district court judges have treated the Palestinian Authority as an unincorporated association. *See, e.g., Sokolow v. Palestine Liberation Org.*, No. 04 CIV. 397 (GBD), 2014 WL 6601023, at *11 (S.D.N.Y. Nov. 19, 2014); *Estate of Klieman v. Palestinian Auth.*, 467 F. Supp. 2d at 113. Because it is not a corporation, the Palestinian Authority does not have a place of incorporation or a principal place of business. The question, then, is what is the place that is "equivalent" to an individual's domicile, where "it is fairly regarded as at home." *Daimler*, 134 S. Ct. at 761.

The application of the *Daimler/Goodyear* framework to the Turkish Republic of Northern Cyprus in *Toumazou v. Turkish Republic of N. Cyprus*, No. CV 09-1967 (PLF), --- F. Supp. 3d ---, 2014 WL 5034621 (D.D.C. Oct. 9, 2014), by another district judge in this district, is illuminating. "Although unrecognized by the United States, the TRNC controls and administers over a third of the island of Cyprus and purportedly operates as a 'democratic republic,' with a President, Prime Minister, legislature, and judiciary. The plaintiffs' allegations, which are

16

premised on the TRNC's ongoing control over their property in Cyprus, indicate that the TRNC is 'at home' in northern Cyprus, as its name suggests, not in the District of Columbia." *Id.* at *4 (citations omitted). Similarly, although not recognized as a sovereign government by the United States, the Palestinian Authority governs a portion of the West Bank, *see* Compl. ¶ 7, and Plaintiffs' allegations are premised on the Palestinian Authority's control over officers guarding a Jewish religious site near the West Bank city of Nablus. *See* Compl. ¶ 15. The *Daimler* Court stated that the enumerated paradigm types "have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Daimler*, 134 S. Ct. at 761. It is common sense that the single ascertainable place where a government such at the Palestinian Authority should be amenable to suit for all purposes is the place where it governs. Here, that place is the West Bank, not the United States.[12]

Plaintiffs argue that the Palestinian Authority has many connections with the United States, including the performance of fundraisers, community outreach, cultural events, and lectures, as well as certain governmental services, particularly consular services. *See* Pls.' Opp'n at 33-34; Spitzen Decl. ¶ 11. Most if not all of these activities are conducted by the Palestine Liberation Organization; some of them are specifically conducted by the General Delegation PLO to the U.S., located in Washington, D.C. The parties dispute whether these activities can be attributed to the Palestinian Authority, as well. The Court need not resolve that dispute because,

---

[12] In certain unusual circumstances, a government may be based outside of its home territory. *See, e.g.*, *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 758 (D.C. Cir. 1990) (Basque government-in-exile based in Paris); *Lee Wei Fang v. Kennedy*, 317 F.2d 180, 184 (D.C. Cir. 1963) (legal government of Greece in exile in England during World War II while Nazis occupied Greece). If such a government were operating within the United States, it is possible that there would be general jurisdiction over that government in the location in which it was operating. *Cf. Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952) (general jurisdiction in Ohio over Philippine corporation overseen from Ohio during World War II Japanese occupation of Philippines). However, Plaintiffs have never suggested that the Palestinian Authority operates from the United States in such a fashion.

even if all of those contacts are attributed to the Palestinian Authority, Plaintiffs have not

provided evidence to support a *prima facie* case, as they must, that the Palestinian Authority's

affiliations with the United States are "so 'continuous and systematic' as to render [it] essentially

at home in" the United States. *Daimler*, 134 S. Ct. at 751. None of the facts on which Plaintiffs

rely suggest that the Palestinian Authority is at home in the United States. To the contrary, many

of the services allegedly provided on behalf of the Palestinian Authority suggest that the

Palestinian Authority is *not* at home. Consular services in particular are generally offered by a

government when it is not at home; services like community outreach and cultural events are

also consistent with the nature of a government—or an affiliate of some sort—operating abroad,

rather than the operations of a government "at home."[13]

　　　The Court respectfully disagrees with the recent application of *Daimler* to the Palestinian

Authority by a judge in the Southern District of New York in *Sokolow v. Palestine Liberation

Organization*, 04-cv-397-GBD, 2014 WL 6811395 (S.D.N.Y. Dec. 1, 2014). In that case, the

record indicated that the Palestinian Authority had 100,000 employees but did not indicate how

many of these employees worked outside of the West Bank or Gaza. *Id.* at *2. In those

circumstances, the district judge concluded "[t]his record is therefore insufficient to conclude

that either defendant is 'at home' in a particular jurisdiction other than the United States." *Id*. It is

Plaintiffs' burden to present a *prima facie* case for jurisdiction at this stage of the litigation

---

[13] Defendant argues that many of the alleged contacts with the United States are not proper bases
for jurisdiction because, pursuant to the government contacts exception, "a nonresident's entry
into the [forum] for 'the purpose of contacting federal governmental agencies cannot serve as a
basis for personal jurisdiction.'" *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 25
(D.D.C. 2014) (citation omitted). Plaintiffs argue that the government contacts exception does
not apply to foreign defendants and that government contacts are only a small fraction of the
activities attributable to the Palestinian Authority in the United States. The Court need not
resolve this dispute because, even if all of the alleged contacts were proper to consider for
jurisdictional purposes, they would not make the Palestinian Authority "essentially at home" in
the United States.

process; in doing so they must overcome the common sense presumption that a non-sovereign government is at home in the place they govern. None of the contacts with the United States on which the Plaintiffs rely, even if attributable to the Palestinian Authority, do so. Accordingly, the Court concludes that it does not have general jurisdiction over the Palestinian Authority.

### c.   Jurisdictional Discovery Is Not Warranted Regarding General Jurisdiction

Plaintiffs argue that, if the Court does not find sufficient support for general jurisdiction in the record, the Court should permit jurisdictional discovery rather than dismissing for lack of personal jurisdiction. The Court, however, concludes that jurisdictional discovery is not warranted. To be granted jurisdictional discovery, "a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d at 1090. "Mere conjecture or speculation" is not enough to justify such discovery. *FC Investment Group LC*, 529 F.3d at 1094. Plaintiffs seek to discover additional information regarding the Palestinian Authority's activities in the United States and information tying the Palestinian Authority to the Palestine Liberation Organization's activities. But the Court cannot "see what facts additional discovery could produce that would affect our jurisdictional analysis." *Mwani*, 417 F.3d at 17. Neither additional information about the Palestinian Authority's activities in the United States nor information tying the Palestinian Authority to the Palestine Liberation Organization could even plausibly show that the Palestinian Authority is "essentially at home" in the United States. Because Plaintiffs have suggested no way in which discovery would yield information enabling them to make a *prima facie* case for general jurisdiction, jurisdictional discovery is not warranted with respect to general jurisdiction. The Court addresses jurisdictional discovery with respect to specific jurisdiction below.

**D. No Specific Jurisdiction over the Palestinian Authority Based on the Claims in this Action**

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation. For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). In *Walden v. Fiore*, the Supreme Court, last year, clarified several elements of the specific jurisdiction inquiry. In particular, first, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum." 134 S. Ct. at 1122 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original). Second, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. In these circumstances, this inquiry applies with respect to the Defendant's contacts with the United States rather than with a specific State or with specific individuals in the United States. *See Mwani*, 417 F.3d at 11.

**a. Contacts Are Too Attenuated to Support Specific Jurisdiction**

Plaintiffs argue that the attack on Benyo Livnat and other victims in Nablus in 2011 was "part of the PA's policy and practice of encouraging acts of terror and using terrorism to influence United States public opinion and policy." Pls.' Opp'n at 36 (citing Compl. ¶ 14). Specifically, Plaintiffs argue that the "PA's conduct in facilitating, encouraging, and ratifying the April 2011 terrorist attack therefore, was in no small part directed at influencing United States foreign policy." *Id*. at 35-36. Plaintiffs link this attack to other alleged activities in the U.S.[14] Therefore, Plaintiffs argue, the Palestinian Authority has "purposefully directed its policy and

[14] Some of these activities are activities that Defendant maintains are solely activities of the Palestine Liberation Organization, while Plaintiffs claim they can be attributed to the Palestinian Authority, as well, even if the activities are performed by the Palestine Liberation Organization.

practice of inciting terrorism towards the United States." *Id.* at 36. The Court need not resolve the parties' dispute regarding Plaintiffs' theory that the Palestinian Authority generally uses acts of terrorism in order to influence U.S. government policy, *see supra* note 7, because, in any event, there are insufficient links between the specific acts underlying this action and the United States to support specific jurisdiction.

Plaintiffs' argument that specific jurisdiction may be based on the effects of the Palestinian Authority's acts on the U.S. *citizens* living in Israel is vitiated by the Supreme Court's holding in *Walden* that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122. Moreover, it is "insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts.'" *Id.* at 1123. Plaintiffs claim that the attack on the visitors to Joseph's Tomb was intended to influence the policies of the U.S. and Israeli governments, *see* Compl. ¶ 51.c. Plaintiffs allege that non-U.S. citizen victim Benyo Livnat had family members who were U.S. citizens (but residing in Israel)—including one present at the scene of the attack. However, Plaintiffs never claim that this impact on U.S. citizens is anything but random or fortuitous. Nor do they claim that the fact that two other victims of the attack—Yisrael and Natan Safra, who are Plaintiffs in a related lawsuit before this Court—were U.S. citizens (but residing in Israel), as was another member of their family, is anything but "random" and "fortuitous." Even insofar as these connections to U.S. citizens are a relevant component of the specific jurisdiction inquiry after *Walden*, all of these connections to U.S. citizens are far too attenuated to support specific jurisdiction. Effectively, Plaintiffs claim that by attacking a group of Jewish worshippers in the West Bank—without any actual knowledge or even a reason to believe that those victims were connected to the United States—the Palestinian Authority was attempting to influence U.S.

government policy towards Israel. Because this claim does not allow the Court to conclude that "defendant's conduct connects [it] to the forum in a meaningful way," it is an insufficient basis for specific personal jurisdiction. *Walden*, 134 S. Ct. at 1125.

Insofar as Plaintiffs rely on the effects test of *Calder v. Jones*, 465 U.S. 783 (1983), the attenuated effects alleged here are a far cry from those in *Calder*. In *Calder*, the Supreme Court held that California's assertion of jurisdiction over defendants, regarding a libel claim, was proper based on the effects of the defendants' conduct in California. *See Walden*, 134 S. Ct. at 1123 ("We found those forum contacts to be ample: The defendants relied on phone calls to 'California sources' for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the 'brunt' of that injury was suffered by the plaintiff in that State.") The Supreme Court found that California was "the focal point both of the story and of the harm suffered." *Id.* The same cannot be said here. The focal point of the harm was surely in the West Bank—or perhaps in nearby areas of Israel where victims and their family members lived. So, too, the attack was carried out in the West Bank, and Plaintiffs have not suggested that other alleged enabling actions of the Palestinian Authority—hiring Saabneh and his compatriots, assigning him to this religious site, and equipping him with weapons—happened anywhere but the West Bank.[15]

The cases that Plaintiffs cite are not to the contrary. Each is distinguishable by virtue of legal and factual differences. For example, in *Mwani*, the D.C. Circuit found jurisdiction supported by allegations that Osama Bin Laden and al Qaeda "orchestrated the bombing of the

---

[15] Plaintiffs' request for jurisdictional discovery does not suggest that discovery would allow Plaintiffs to discover any additional information pertaining to this specific attack that would suggest a connection between the attack and the United States.

American embassy in Nairobi, not only to kill both American and Kenyan employees inside the building, but to cause pain and sow terror in the embassy's home country, the United States," as well as of "an ongoing conspiracy to attack the United States, with overt acts occurring within this country's borders." 417 F.3d at 13. The attack underlying the action currently before the Court does not involve an attack on an American embassy or an attack that would be likely to "cause pain and sow terror" in the U.S. in anywhere near the same extent as an attack on an American embassy would cause. Nor does this case involve overt acts, within U.S. borders, furthering a conspiracy to attack the U.S.

Other cases on which Plaintiffs rely arise out of different legal contexts and are plainly distinguishable. For example, *Daliberti v. Republic of Iraq*, 97 F. Supp. 2d 38 (D.D.C. 2000), involved a constitutional challenge to the state sponsored terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"). *See id.* at 53. Although that court relied, in part, on certain factors relevant to a Due Process analysis, there was no dispute that the Due Process clause was not applicable there, and that court ultimately upheld the statute based upon factors particular to the statute. *See id.* at 53-54. That analysis in inapplicable in the constitutional Due Process inquiry necessary here. Similarly, *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998), involved the application of the state sponsored terrorism exception pursuant to the FSIA. It is true that that court concluded that, even if foreign states had Due Process rights, the court would have jurisdiction over Iran. *Id.* at 21. However, the factors on which that court relied in arriving at that conclusion are inapplicable here. First, that court relied on the fact that the "state sponsored terrorism exception, however, provides an express jurisdictional nexus based upon the victim's United States nationality." *Id.* at 22. In *Walden*, the Supreme Court clarified that the relevant contacts for Constitutional purposes are with the forum itself, not with people connected

to that forum. 134 S. Ct. at 1122. Therefore, the happenstance that some of the direct victims of the attack underlying this action and some family members of victims were U.S. citizens cannot establish jurisdiction. Second, that court relied on the contacts between state actors. *Flatow*, 999 F. Supp. at 23. However, even aside from the non-sovereign status of the Palestinian Authority, the analogous contacts of the Palestinian Authority with the United States would be outside the scope of suit-related conduct and are therefore ineffective in establishing specific jurisdiction. *See Walden*, 134 S. Ct. at 1121.

Plaintiffs also rely on *United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003), which arose out of a context that is far from analogous to the action before this Court: a criminal prosecution for the bombing of an airplane traveling from the Philippines to Japan. *See id.* at 79. Most importantly, the court there applied the Due Process test for asserting jurisdiction over extraterritorial criminal conduct, which differs from the test applicable here. *See id.* at 111 ("In order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States so that such application would not be arbitrary or fundamentally unfair.") *(quoting United States v. Davis,* 905 F.2d 245, 248–49 (9th Cir. 1990)). That test does not require a nexus between the *specific* criminal conduct and the United States, whereas for jurisdiction in this civil action "the defendant's *suit-related conduct* must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121 (emphasis added). In any event, the connections with the United States of the defendant in *Yousef* far exceed those of the Palestinian Authority here. *Cf. Yousef*, 327 F.3d at 112 ("The defendants conspired to attack a dozen United States-flag aircraft in an effort to inflict injury on this country and its people and influence American foreign policy, and their attack on the Philippine Airlines flight was a 'test-run' in furtherance of this conspiracy.")

These connections are far beyond Plaintiffs' claim that the Palestinian Authority intended for the shooting attack to influence U.S. government policy.

Even the reasoning of *Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76 (D.D.C. 2006), in which another judge in this district took a broad view of personal jurisdiction under the ATA, would not extend as far as the facts in this case. In *Sisso*, the district judge concluded that the court had personal jurisdiction over Hamas regarding a bus bombing in downtown Tel Aviv, which had not targeted Americans specifically. That court acknowledged that "most such cases have involved terrorist acts that targeted U.S. persons or interests with a directness not evident in the facts alleged here (e.g., assaults on American servicemen or embassies)." *Id.* at 90. However, that court then reasoned that "it is nonetheless entirely foreseeable that an indiscriminate attack on civilians in a crowded metropolitan center such as Tel Aviv will cause injury to persons who reside in distant locales—including tourists and other visitors to the city, as well as relatives of individuals who live in the area." *Id.* However, the setting for the shooting attack underlying this action—a shooting directed at discrete group of worshippers at a religious site near the West Bank city of Nablus—is far different from a bus bombing "in a crowded metropolitan center such as Tel Aviv." *Id.* Even if it were in fact foreseeable that the bus bombing in *Sisso* would have led to harm against Americans, the shooting attack on seventeen individuals visiting a Jewish religious site in a far different setting would not support the same broad conclusion regarding specific jurisdiction.

In sum, all of these cases on which Plaintiffs rely are distinguishable from the facts currently facing the Court. Moreover, all of these cases were issued before recent Supreme Court precedent evincing stricter standards for personal jurisdiction. Specifically, these cases were issued before the Supreme Court applied the test for specific jurisdiction narrowly in *Walden v.*

*Fiore*, where the Supreme Court specified that a court must evaluate Defendant's intentional contacts with the forum itself rather than with its citizens, as discussed above. *See* 134 S. Ct. at 1122. *Cf. Daimler*, 134 S.Ct at 751 (applying test for general jurisdiction strictly); *Goodyear*, 131 S. Ct. at 2853 (same). Because the earlier cases regarding terrorist activity acts abroad, on which Plaintiffs rely, did not have the benefit of the most recent Supreme Court authority regarding personal jurisdiction, it is possible that the outcomes in those cases would be different today, as well.

Ultimately, Plaintiffs have not presented a *prima facie* case linking the specific attack underlying this action to the United States. In arguing that the Palestinian Authority intended that this particular attack was intended to influence U.S. policy, Plaintiffs provide no more than a conclusory statement in support of that argument. *See* Compl. ¶ 51.c ("The shooting attack was also intended, through intimidation and coercion, to influence the Israeli and United States governments' policies regarding the right of Israelis to visit Jewish religious sites in the West Bank or to visit or live in the West Bank, as well as both governments' policies regarding peace negotiations with the Palestinian Authority and Israel's continued presence in the West Bank."). Indeed, Plaintiffs do not even suggest that jurisdictional discovery could generate additional facts connecting this specific attack to the U.S; rather, Plaintiffs aim to discover more facts about Palestinian Authority activities in the U.S. Even if these facts were forthcoming, it would require a logical leap to conclude that this specific attack—with no evident connections to the U.S.—was in fact directed at the United States. Moreover, even if Defendant's intent was indeed directed towards the United States in some sense, the path by which it directed this intent—by attacking a discrete group of Jewish worshippers in the West Bank without any reason to believe that the attack would affect U.S. property or citizens or that it would directly influence U.S. policy—is

26

simply too attenuated to pass Constitutional muster. These connections are not enough to establish specific jurisdiction over this claim.

Lastly, citing cases from other Circuits, Plaintiffs argue that the Court should not dismiss for lack of personal jurisdiction because the question of specific personal jurisdiction is intertwined with the merits. However, Circuit precedent only instructs this Court that, "though the trial court may rule on disputed jurisdictional facts at any time, if they are inextricably intertwined with the merits of the case it should usually defer its jurisdictional decision until the merits are heard." *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 198 (D.C. Cir. 1992). Unlike the district court in *Herbert*, the Court here does not resolve any disputed material facts. The Court simply concludes that Plaintiffs have not presented a *prima facie* case for specific jurisdiction over the Palestinian Authority, as they must at this stage. Nor have Plaintiffs presented a request for jurisdictional discovery that would allow them to make such a case, as the Court discusses further in the following section. Accordingly, the Court is not only permitted to resolve this case on jurisdictional grounds, it is required to do so—rather than proceeding to the merits without a proper jurisdictional foundation. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (requiring assessment of personal jurisdiction before court can proceed to merits of dispute).

**b.   Jurisdictional Discovery Is Not Warranted Regarding Specific Jurisdiction**

With respect to Plaintiffs' request, in the alternative, for jurisdictional discovery in order to support a case for specific jurisdiction, the Court concludes that jurisdictional discovery is not warranted.  Plaintiffs do not indicate any other facts pertaining to this particular incident that they could discover that would establish a basis for specific jurisdiction over the Palestinian Authority with respect to the claims at issue in this case. Indeed, Plaintiffs' jurisdictional

discovery motion itself appears focused on establishing general jurisdiction. *See* Pls.' Jur. Disc. Mot. at 2 ("Through this additional discovery, Plaintiffs will be able to further demonstrate how the Palestinian Authority operates out of the Washington, D.C. office and uses that office to influence public policy and public opinion in the United States."). Although Plaintiffs' reply discusses the discovery sought in the context of specific jurisdiction, as well as with respect to general jurisdiction, it does not suggest that Plaintiffs aim to obtain any discovery specific to the attacks underlying this action. *Cf.* Pls.' Jur. Disc. Reply at 4 ("Jurisdictional discovery would allow Plaintiffs to obtain additional evidence demonstrating the PA's contacts in this forum and how those contacts form part of the same overarching strategy as the terrorist conduct alleged in this case."). None of the additional discovery that Plaintiffs propose could show the requisite relationship between suit-related conduct and the United States. Even if Plaintiffs were able to present information showing a network of contacts that aim to influence U.S. policy, through terrorist activity among other means, the Court would still conclude that the jurisdictional connection that Plaintiffs have suggested—stretching from a shooting attack near the West Bank city of Nablus on people with no known connections to the United States all the way to an attempt to influence U.S. policy—is simply too attenuated to support specific jurisdiction in this case. Because Plaintiffs have not "reasonably demonstrate[d] that it can supplement its jurisdictional allegations through discovery" with any allegations that would alter the Court's conclusions regarding jurisdiction, jurisdictional discovery is not justified. *Exponential Biotherapies, Inc.*, 638 F. Supp. 2d at 11.

## IV. CONCLUSION

For the foregoing reasons, Defendant Palestinian Authority's [13] Motion to Dismiss is GRANTED and Plaintiffs' [17] Cross-Motion, in the Alternative, for Leave to Take Jurisdictional

Discovery is DENIED. The Court concludes that jurisdictional discovery is not warranted and that this Court does not have personal jurisdiction over Defendant Palestinian Authority with respect to this action. Accordingly, all claims are dismissed, and this action is dismissed in its entirety. An appropriate Order accompanies this Memorandum Opinion.

Dated: February 11, 2015

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge